**In re PHOTO PROMOTION ASSOCIATES, INC., Debtor.**

**NANUET NATIONAL BANK, Plaintiff,**

**v.**

**PHOTO PROMOTION ASSOCIATES, INC., Jeffrey Sapir, Interim Trustee, and First Transcapital Corp., Defendants.**

**Bankruptcy No. 84 B 20417.**
**85 Adv. 6045.**

United States Bankruptcy Court, S.D. New York.

June 17, 1986.

Robert E. Blackburn and Associates, Suffern, N.Y., for Nanuet Nat. Bank; Richard K. Matanle, II, of counsel.

Siegel, Sommers & Schwartz, New York City, for Jeffrey Sapir, trustee; Leonard Schwartz, of counsel.

## DECISION ON COMPLAINT SEEKING ORDER FOR RECOVERY OF FUNDS

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Nanuet National Bank ("NNB"), the plaintiff in this adversary proceeding, seeks to recover the proceeds from photographic portrait orders which the trustee in bankruptcy caused to be processed and filled after the debtor's Chapter 11 reorganization case was converted for liquidation under Chapter 7 of the Bankruptcy Code. The trustee in bankruptcy contends that pursuant to 11 U.S.C. § 552(a) and (b), the debtor's postpetition proceeds from customer orders that were processed by the trustee into finished products by the expenditure of estate funds are not subject to any lien arising under the security agreement entered into by the debtor with the plaintiff before the commencement of the Chapter 11 case.

### FINDINGS OF FACT

The following facts were stipulated and are not contested:

1. NNB is a national banking corporation organized under the laws of the United States of America, having its principal place of business located at 250 South Middletown Road, Nanuet, New York.

2. This case was commenced on October 3, 1984 by the filing with this court of a petition seeking relief under Chapter 11 of the Bankruptcy Code.

3. The debtor was engaged in the business of providing photographic portrait services in shopping centers, shopping malls and department stores in the continental United States on a concession basis, processing photographic portrait orders from its principal place of business in the town of Monsey, Rockland County, New York and its branch offices located at various places across the United States.

4. The debtor's Chapter 11 reorganization case was converted to a case under Chapter 7 by this court's order entered March 13, 1985, at which time the defendant trustee was appointed interim trustee. By subsequent order of the Bankruptcy Court the trustee was appointed permanent trustee.

5. On November 16, 1984, NNB filed proofs of claim aggregating $658,333.38 plus interest, costs and attorney's fees incurred in connection with these claims.

6. Among the orders processed by the trustee are two hundred and thirty three (233) orders pre-dating the date that the petition was filed in this case. The aggregate dollar amount of those orders processed and funds received by the trustee is $11,787.21.

7. Among the orders processed by the trustee are a further fifty six (56) orders dated October 3, 1984, (the date the debtor filed its petition). The amount of those orders and funds received by the trustee in connection with them is $2,853.73.

8. On March 27, 1985 the trustee requested that NNB turn over all balances in the debtor's accounts at NNB to the trustee.

In addition to the foregoing stipulated facts, the following facts were determined by the court following the hearing:

9. On July 30, 1981 the debtor and the plaintiff entered into a security agreement to collateralize the advances and credit received and to be received by the debtor for the plaintiff. The interest in the collateral described in the security agreement was perfected by the plaintiff's filing of appropriate financing statements with the New York Secretary of State and with the Rockland County Clerk's office, the county where the debtor was located.

10. The security agreement covered the following property of the debtor, as described in the financing statement:

All accounts receivable, inventory in all forms wherever located, business equipment, furniture, fixtures and general intangibles owned or owed or to be hereafter acquired or created and the proceeds thereof.

This language substantially conformed to the description of the secured collateral in paragraph (1)(b) of the security agreement, which also referred to "contract rights ... instruments, investment securities, chattel paper and documents ...."

11. After this case had been converted from Chapter 11 to Chapter 7, the trustee in bankruptcy was permitted to process and complete photograph portrait orders that were on hand when he was appointed, pursuant to an order of this court. The trustee was authorized to borrow funds from another financing source to complete these orders and to collect payment from the debtor's customers for the orders that were thereafter processed into portraits and shipped to the customers.

12. There were numerous filing cabinets located on the debtor's premises when the case was converted to Chapter 7 which contained orders and other documents. These cabinets and their contents were shipped to Esquire Color Labs for the purpose of processing the orders. There are presently between ten and twelve of these file cabinets located at the premises of Esquire Color Labs. All of these filing cabinets are covered by the plaintiff's security agreement.

13. The plaintiff established that it liquidated the debtor's collateral in its possession in a commercially reasonable manner. The trustee did not introduce any evidence to the contrary.

14. The outstanding balance due from the debtor to the plaintiff following the plaintiff's liquidation of the debtor's collateral amounts to $208,333.38.

## DISCUSSION

The postpetition effect of a prepetition security interest is generally governed by 11 U.S.C. § 552(a), which provides that if a security agreement is entered into before the commencement of the case, then property that the estate acquired after the petition is not subject to the prepetition security agreement, even though the agreement expressly provided that it extends to after-acquired property. However, 11 U.S.C. § 552(b) contains an express exception to this general rule and provides:

Except as provided in section 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case orders otherwise.

The exception within the exception is explained in the legislative history as follows:

> The exception covers the situation where raw materials, for example, are converted into inventory, or inventory into accounts, at some expense to the estate, thus depleting the funds available for general unsecured creditors, but is limited to the benefit inuring to the secured party thereby.

H.Rep. No. 595, 95th Cong., 1st Sess. 376–77 (1977), reprinted in [1978] U.S.Code Cong. & Ad.News, 5787, 6332–33.

> Proceeds coverage, but not after acquired property clauses, are void under title 11. The provision allows the court to consider the equities in such case. In the course of such consideration the court may evaluate any expenditures by the estate relating to proceeds and any related improvement in position of the secured party.

124 Cong. Rec. H11097–98 (daily ed. Sept. 28, 1976); S17414 (daily ed. Oct. 6, 1978) (remarks of Rep. Edwards and Sen. DeConcini.) *See Wolters Village, Ltd. v. Village Properties, Ltd.* (*In re Village Properties, Ltd.*), 723 F.2d 441, 444 (5th Cir.1984) *cert. denied* 466 U.S. 974, 104 S.Ct. 2350, 80 L.Ed.2d 823 (1984) "... its purpose was to cover cases where an expenditure of the estate's funds increases the value of the collateral."

■ In the case at bar, the orders on hand for finished portraits that the debtor had in its files when it commenced its Chapter 11 case were contract rights covered by the plaintiff's security agreement. However, there was no evidence that these orders had any value to the plaintiff or to anyone else unless they could be processed promptly into family portraits. Many of the orders were not recent and there was uncertainty as to whether the customers still wanted their relatives' pictures long after the snapshots were taken. In any event, in order to obtain payment from the debtor's customers the trustee was required to borrow additional funds on behalf of the estate to process the orders, including the delivery of the unprocessed film to a photography laboratory to develop the pictures, print the portraits, mount them in appropriate wooden frames or backs; and then mail the finished portraits to the customers. The proceeds that the trustee received for the finished portraits resulted from the trustee's expenditure of estate funds to create items of value that did not exist when the Chapter 11 case was converted to Chapter 7 for liquidation. Accordingly, the estate was responsible for all of the value of the finished products which were transformed into the proceeds that the plaintiff now claims. In these circumstances it would be inequitable to allow the plaintiff to claim these proceeds from this estate pursuant to the after-acquired clause in its security agreement, especially since the general policy reflected in 11 U.S.C. § 552(a) is to restrict the claims of prepetition secured interests to prepetition collateral and regard after-acquired property as property of the estate.

■ The trustee in bankruptcy has properly invoked the equity exception in 11 U.S.C. § 552(b). *See J. Catton Farms, Inc. v. First National Bank of Chicago,* 779 F.2d 1242, 1246 (7th Cir.1985) "The equity exception is meant for the case where the trustee or debtor in possession uses other assets of the bankrupt estate (assets that would otherwise go to the general creditors) to increase the value of the collateral". The equity exception in 11 U.S.C. § 552(b) requires a bankruptcy court to balance the rights between prepetition security interests and those of the creditors of the estate. Thus, when the estate furnishes the funds to transform an order that the debtor in possession did not have the funds to complete and when a finished portrait is produced that did not exist before the trustee in bankruptcy undertook the effort to complete unfilled orders, the trustee should be allowed to distribute the proceeds received for the finished portraits among all the unsecured claims *pro rata.* As stated in *United Virginia Bank v. Slab Fork Coal Company,* (*In re Slab Fork*

*Coal Company)*, 784 F.2d 1188, 1191 (4th Cir.1986):

[I]t should be noted that § 522(b) gives the bankruptcy court considerable latitude in applying pre-petition security interests to post-petition proceeds. As evidenced by the final clause in § 552(b), a bankruptcy court may choose not to apply a pre-petition security interest to post-petition proceeds "based on the equities in the case."

The equities in this case reveal that the postpetition proceeds from the processed portraits should not be turned over to the plaintiff and should remain property of the estate for all the unsecured creditors.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties to this adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a).

2. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(K) which this court may hear and determine.

3. Based on the equities of the case, the plaintiff's security agreement does not extend to the proceeds received by the trustee in bankruptcy from the sale of finished family portraits which were not in existence at the commencement of this case and which were thereafter produced by a film laboratory and shipped to customers as a result of the activities of the trustee in bankruptcy, who paid for the creation of the finished portraits with funds from the estate. These proceeds are excluded under the equitable exception expressed in 11 U.S.C. § 552(b).

■ 4. The plaintiff's security interest does extend to the filing cabinets located on the debtor's premises when this case was commenced and which were delivered to the film processor with their contents. These filing cabinets shall be returned to the plaintiff.

SETTLE ORDER in accordance with the foregoing.