**In re WYNNEWOOD HOUSE ASSOCIATES, Debtor.**

**Bankruptcy No. 90–13023F.**

United States Bankruptcy Court, E.D. Pennsylvania.

Dec. 6, 1990.

Diane J. Sigmund, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for the movant, Heller Financial, Inc.

Charles M. Golden, Beth Golden Frieder, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for the debtor, Wynnewood House Associates.

## MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

Before me is a motion brought by Heller Financial, Inc. ("Heller"), which seeks an order for "Sequestration of Rents" currently collected by Wynnewood House Associates ("debtor") and that are allegedly the cash collateral of Heller. The facts may be summarized as follows and were stipulated to by the parties.

### I.

The debtor filed a petition under chapter 11 of the Bankruptcy Code on July 26, 1990. The debtor owns, operates, and manages a residential apartment complex and office building located at 300 E. Lancaster Avenue, Wynnewood, Pennsylvania (the "Premises"). The debtor continues to operate and manage this property as debtor in possession.

On July 17, 1989 Heller made a loan in the principal amount of $9,720,000.00 (the "loan") to the debtor. The following documents were executed contemporaneously: a promissory note; a "mortgage security agreement and assignment of leases and rents;" and, an "assignment of leases and rents." Ex. H–1, H–2 and H–5. It is undisputed by the parties that along with receiving collateral in the real estate itself, Heller also received a security interest in the rents generated by the realty.

Heller's mortgage, Ex. H–2, securing the loan contains clauses assigning rents and leases in these terms:

[A]. Mortgage, security agreement and assignment of leases and rents. . . .

## SECTION 1
### GRANTING CLAUSE

NOW, THEREFORE, to secure the Indebtedness, and to secure the performance and observance by Mortgagor of the covenants, conditions and agreements contained in the Note, this Mortgage and/or the Other Agreement, ... Mortgagor does ... MORTGAGE, ... AND CONVEY unto the Mortgagee ...

(c) All leases, ... in any way belonging, relating to or appertaining to any of the Premises, ... including but not limited to:

(i) All leases and ... all rents, ... from the Premises ... from time to time accruing, whether under Leases, concessions or tenancies now existing or hereafter created, reserving to Mortgagor, however, so long as no "event of Default" ... has occurred hereunder, the right to receive and retain the rents, issues and profits thereof; ....

[B]. ASSIGNMENT OF LEASES AND RENTS ...

... Assignor hereby grants, transfers, and assigns to the Assignee all of the right, title and interest of Assignor in and to all existing and future leases, ... together with all rent, income and profit therefrom....

Similarly, the assignment, H–3, "assigns to [Heller] all of the right, title, and interest of [the debtor] in and to all existing and future leases ... together with all rent, income, and profit therefrom...." The assignment also, at ¶ B 1, grants the debtor the right to receive and use all rents until a default occurs.

Heller recorded both the mortgage and the assignment with the Pennsylvania Montgomery County Recorder of Deeds on July 20, 1989. (Exs. H–2 and H–5). On May 1, 1990, the debtor failed to make the monthly payment of interest and escrow due and, thus, defaulted on its obligations to Heller. On May 22, 1990, Heller sent the debtor a Notice of Default by certified mail. (Defendant's Answer to motion, ¶ 7; Ex. H–3 (Attachment)). On July 23, 1990 Heller sent a letter demanding repayment of $9,519,230.42 plus per diem interest. (Ex. H–3.)

The debtor failed to cure the default, and failed to tender any of the interest, late charges and escrow payments due thereafter. On July 20, 1990, the debtor submitted a proposed repayment plan to Heller to bring the loan current. (Ex. H–3). Heller rejected debtor's proposal in a letter dated July 23, 1990, made a counterproposal for the debtor's consideration, and noted it would forbear from taking action against the debtor until August 3, 1990 while its proposal was being reviewed. (Ex. H–3). This letter also stated that if the parties did not enter into an acceptable modification of the loan, or if Heller did not receive full payment of its loan by August 3, 1990, Heller would "vigorously pursue [its] legal remedies". (Ex. H–3).

On July 25, 1990, the debtor notified Heller that it was considering Heller's counterproposal and would respond to Heller after certain individuals had reviewed the terms of the new plan. (Ex. H–4). The following day, July 26, 1990, the debtor filed its chapter 11 petition.

On or about August 13, 1990, the parties discussed but did not resolve Heller's interest in the rents and debtor's use of the cash collateral. Heller then filed this motion to "sequester rents." Specifically, Heller requests that all rents not utilized by the debtor "as ordinary operating expenses" be sequestered and deposited in a special account which may only be used upon further order of this court. The debtor has filed an answer denying Heller's right to the relief it sought.

In support of its request, Heller contends that it holds a perfected prepetition security interest in rents of the debtor's realty which, by virtue of 11 U.S.C. § 363(a), makes these rents "cash collateral." Heller then argues that this prepetition security interest in rents is preserved postpetition by 11 U.S.C. § 552(b). As Heller does not consent to the use of its "cash collateral" beyond the payment of ordinary operating expenses, and as the debtor has never sought court approval for the use of cash collateral, 11 U.S.C. § 363(c)(2), Hel-

ler, at bottom, is requesting that the debtor be enjoined from using its cash collateral without its consent. *See Matter of L.G. Edwards Farm, Inc.*, 30 B.R. 842, 844 (Bankr.E.D.Mo.1983). The debtor counters that the rents from its realty are not cash collateral. Both parties correctly assert that the resolution of this dispute requires consideration of nonbankruptcy law, specifically Pennsylvania law, concerning the right of a mortgagee to receive the rents from realty.

## II.

The applicability of Pennsylvania law to a discussion of Heller's rights in postpetition rents stems both from 11 U.S.C. § 552(b)[1] and *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). In *Butner,* the Court expressly held that the right of a mortgagee to receive rents postpetition under the former Bankruptcy Act of 1898 would be determined solely by nonbankruptcy law.

As was noted by the *Butner* Court, there were two divergent approaches concerning a mortgagee's postpetition right to receive rents. One approach looked to nonbankruptcy law, generally state law; the other looked to bankruptcy law. Before the Supreme Court overruled the latter approach, the Third Circuit Court of Appeals had developed a "federal rule of equity that afford[ed] the mortgagee a secured interest in [postpetition] rents even if state law would not recognize any such interest until after foreclosure." *Butner,* 440 U.S. at 53, 99 S.Ct. at 917 (*citing Bindseil v. Liberty Trust Co.,* 248 F. 112 (3d Cir.1917); *In re Pittsburgh–Duquesne Development Co.,* 482 F.2d 243 (3d Cir.1973) ). Under this uniform, federal construction of bankrupt-

cy law, a mortgagee would be entitled to recover postpetition rents whether a security interest had been taken on rents, and whether the mortgagee had taken steps prepetition to obtain possession of the property, simply by virtue of the mortgagor's bankruptcy filing. *See Central Hanover B. & T. Co. v. Philadelphia & R.C. & I, Co.,* 99 F.2d 642, 645 (3d Cir.1938). *See also* Randolph, *The Mortgagee's Interest in Rents: Some Policy Considerations and Proposals,* 29 Kansas L.Rev. 1, 44 (1980).

In support of its holding which overruled the Third Circuit's position, the *Butner* Court reasoned that Congress has generally left the determination of property interests which comprised a debtor's estate to state law: "Property interests are created and defined by state law." *Butner,* 440 U.S. at 55, 99 S.Ct. at 918. Furthermore, "[t]he justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests, including the interest of a mortgagee in rents earned by mortgaged property." *Id.* at 55, 99 S.Ct. at 918 (footnote omitted). Thus, the Supreme Court determined that the interest of a mortgagee in postpetition rents from real estate would be defined by state law under the former Bankruptcy Act.

■ The validity of *Butner* was not disturbed by the enactment of the Bankruptcy Code of 1978. *See e.g., Matter of Village Properties, Ltd.,* 723 F.2d 441, 443 (5th Cir.1984), *cert. denied,* 466 U.S. 974, 104 S.Ct. 2350, 80 L.Ed.2d 823 (1984); *In re Jones,* 77 B.R. 981, 983 (Bankr.M.D.Ga. 1987). *See also Matter of Roach,* 824 F.2d 1370, 1374 (3d Cir.1987); *In re Farmers Markets, Inc.,* 792 F.2d 1400, 1402 (9th Cir.1986). Indeed, the reference in section

**1.** Section 552(b) states:
(b) except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property,

then such security interest extends to such proceeds, produce, offspring, rents, or profits acquired by the estate after the commencement of the case *to the extent provided by such security agreement and by applicable nonbankruptcy law,* except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise. (Emphasis added.)

552(b) to the underlying security instrument and applicable nonbankruptcy law appears to codify the *Butner* holding insofar as postpetition rents are concerned. *Accord In re TM Carlton House Partners, Ltd.*, 91 B.R. 349, 352–53 (Bankr.E.D.Pa. 1988). Therefore, to determine Heller's interest in the debtor's postpetition rents, I must begin with an analysis of Pennsylvania law on the right of a mortgagee to receive rents from real estate.

### III.

▪ Pennsylvania law regarding the interests of a mortgagee in rents stems from its common law.[2] Simplified slightly, as a "title" jurisdiction,[3] Pennsylvania decisions generally proclaim that a mortgagee, (whether its security agreement has a rents assignment[4] provision or not), has the right to seek possession of the realty in certain circumstances (i.e. default) and in prescribed ways. *See Bulger v. Wilderman and Pleet*, 101 Pa.Super. 168, 172 (1931). Until the mortgagee obtains possession, the mortgagor is generally entitled to receive all rents from the realty. *See Colbassani v. Society of Christopher Columbus*, 159 Pa.Super. 414, 48 A.2d 106, 107 (1946); *Miners Sav. Bank v. Thomas,*

140 Pa.Super. 5, 12 A.2d 810 (1940). *See generally*, Comment, *The Mortgagee's Right to Rents After Default*, 50 Yale L.Rev. 1424 (1941) (*"Comment"*). In other words, Pennsylvania is not among those states that consider a collateral assignment of future rents to be both effective and enforceable at the time of the recordation of the rent assignment. *See Fogarty v. Shamokin & Mount Carmel Transit Co*, 367 Pa. 447, 80 A.2d 727 (1951); *Bulger; Comment.* Compare, e.g., *United States v. Landmark Park & Assocs.*, 795 F.2d 683 (8th Cir.1986) (rent assignments are perfected and enforceable upon recordation under federal common law); *In re BVT Chestnut Hill Apartments, Ltd.*, 115 B.R. 116 (Bankr.M.D.Tenn.1990) (state law was amended to make collateral rent assignments perfected and enforceable upon proper recordation); *In re Winslow Center Associates*, 50 B.R. 679 (Bankr.E.D.Pa. 1985) (New Jersey law permits certain rent assignments to be perfected and enforceable upon recordation).

▪ The right of a mortgagor to receive rents is altered once the mortgagee obtains possession. Whether or not the security agreement contains a rent assign-

---

**2.** The Pennsylvania Uniform Commercial Code, *see* 13 Pa.C.S.A. §§ 9102(c) comment 4; 9104(10) comment 2 (1984), does not apply to security interests in rents from realty created by the mortgagor/owner of the real estate. *See In re Bristol Associates, Inc.*, 505 F.2d 1056, 1061 (3d Cir.1974); *In re Porter*, 90 B.R. 399, 402 (N.D. Iowa 1988); *In re Prichard Plaza Associates Ltd. Partnership*, 84 B.R. 289, 296 (Bankr.D. Mass.1988). *See also* 1 Coogan, Hogan & Vagts, *Secured Transactions Under UCC*, § 3.17[1] (1990). *Compare In re Heide*, 915 F.2d 531, 533 (9th Cir.1990) (under Washington law, UCC governs creditor's interest in a contract for the sale of real estate).

**3.** Pennsylvania is generally viewed as a "title" state, as opposed to a "lien" state, concerning security interests in realty. *See* Comment, *The Mortgagee's Right to Rent After Default*, 50 Yale L.Rev. 1424, 1425 n. 6 (1941). However, as is true in many states, the title versus lien distinction has been blurred by court decisions. Pennsylvania's mortgage theory has been summarized, as follows:

> While ordinarily, as to third parties, a mortgage may only be a security for a bond, it is, as to the mortgagor and mortgagee, and those

claiming under and through them, a conveyance of the land, and may be enforced as such whenever the mortgagee deems it necessary so to do in order to enable him to speedily and effectively recover the amount then due on the bond.

*Randal v. Jersey Mortg. Inv. Co.*, 306 Pa. 1, 158 A. 865 (1932). *Accord Bulger v. Wilderman and Pleet*, 101 Pa.Super. 168 (1931); Lloyd, *The Mortgage Theory of Pennsylvania*, 73 U.Pa.L. Rev. 43, 57 (1942).

**4.** The phrase "assignment of rents" refers to a security interest in rents which serves as additional collateral, beyond the realty itself, for the repayment of the mortgage debt. McCafferty, *The Assignment of Rents in the Crucible of Bankruptcy*, 94 Com.L.J. 433, 434 (1989). As Heller does not raise the issue, there is no need to consider here the distinction between an "absolute assignment" which passes title to rents and a "collateral assignment" which pledges the rents as additional security for a loan. *See generally Matter of Village Properties, Ltd.*, 723 F.2d 441, 443 (5th Cir.1984), *cert. denied* 466 U.S. 974, 104 S.Ct. 2350, 80 L.Ed.2d 823 (1984). Heller apparently accepts that it holds a collateral assignment.

ment provision, upon obtaining possession of the realty the mortgagee is entitled to receive all rents from lessees whose leases predate that of the mortgage (to the extent of the unpaid obligation). *See Fogarty v. Shamokin & Mount Carmel Transit Co.,* 80 A.2d at 729; *Easton Theatres, Inc. v. Wells Fargo Land & Mortg.,* 265 Pa.Super. 334, 401 A.2d 1333, 1341 (1979); *Peoples–Pittsburgh Trust Co. v. Henshaw,* 141 Pa. Super. 585, 15 A.2d 711 (1940). The theoretical underpinning for this result is that the subsequent mortgage, whether or not it contains a rents assignment clause, conveyed, *inter alia,* the mortgagor's right to receive the rents. *See Fogarty; Henshaw; Comment.* Unless there was a security interest taken in all present and future rents, however, a mortgagee in possession has no right to demand and receive rents from tenants whose leases postdate that of the mortgage. *See Fogarty; Henshaw; Comment.* Such lessees are viewed not in privity with the mortgagee, and the mortgagee is limited to ejecting the tenant (whether or not the lessee is in default) or to creating a new lease agreement with the lessee. *See id.; Malamut v. Haines,* 51 F.Supp. 837 (M.D.Pa.1943).[5]

■ If the mortgagor has granted the mortgagee a security interest in all rents, including after acquired rents, then it appears that Pennsylvania law will allow a mortgagee in possession to demand rental payments from subsequent as well as prior lessees. *See Fogarty; Randal; Miners Sav. Bank.* Although the decision of *In re TM Carlton House Partners, Ltd.,* 91 B.R. 349 (Bankr.E.D.Pa.1988), relying upon *Malamut,* suggests that Pennsylvania law is to the contrary, I disagree. *Malamut* in-

terpreted *Henshaw,* a Pennsylvania Superior Court decision, as essentially negating assignment of rents clauses concerning subsequent leases. Yet in *Henshaw* there was no rent assignment provision, so the effect of a rents assignment provision did not arise. *Randal,* a Pennsylvania Supreme Court decision, holds that a prior mortgagee may enforce a rent demand upon tenants after the mortgagor's default, and the tenants in that case all had leases subsequent to the mortgage. Moreover, in *Fogarty,* also a Pennsylvania Supreme Court decision (and which postdated *Henshaw* and *Malamut*), the Court refused to permit the mortgagee to collect rents from a subsequent lessee solely because the mortgage contained no rents assignment clause—not because the lease postdated the mortgage. Had the mortgage contained such a clause, then the mortgagee would have prevailed.

There is no dispute, however, that the right of the mortgagee to receive rents, even when the mortgage contains a rents assignment provision, stems from its possession of the real estate. Absent possession, it is the mortgagor/lessor who has the right to receive the rents. *See generally Teal v. Walker,* 111 U.S. 242, 4 S.Ct. 420, 28 L.Ed. 415 (1883); L. Jones, *A Treatise on the Law of Mortgages of Real Property* § 976 (8th ed. 1928). Such possession may be actual, as in the case of a mortgagee in possession, or upon foreclosure of the premises. Pennsylvania procedural rules also provide for rent sequestration, but sequestration is to occur only "upon execution" on a judgment. Pa.R. Civ.P. 3114.[6]

---

5. Upon demand of a mortgagee for payment of rents, such a subsequent lessee can voluntarily make payment to the mortgagee, and such a payment will be proper in the face of a counter demand from the mortgagor. However, the payment cannot be compelled.

6. Although the issue is not without doubt, I assume, without deciding, that Pennsylvania law permits mortgagees to request sequestration of rents. The uncertainty on this point stems from the Pennsylvania execution rules. "Execution" referred to in state court Rule 3114 regarding sequestration refers to an attempt to collect on a money judgment in a civil action. *See*

Pa.R.Civ.P. 3101, 3102, 3103. Pennsylvania has separate rules of procedure concerning mortgage foreclosure actions, Pa.R.Civ.P. 1141–1150; and Rule 1149 states that execution on a foreclosure judgment shall be in accordance with Pa.R.Civ.P. 3180 to 3183. Rule 3181 incorporates many of the procedural rules for executing upon money judgments, but omits any reference to Rule 3114. Whether the reference in Rule 3181 to Rule 3118 which, in turn, allows a court to grant "such other relief as may be deemed necessary and appropriate" permits rent sequestration as an aspect of the foreclosure process is a question I need not answer. *But see In re*

It has also been held in Pennsylvania that possession of the realty may be achieved "constructively" and constructive possession arises simply when the mortgagee makes a demand for rent payment from the tenants after the mortgagor has defaulted in payments. *See Bulger*, 101 Pa.Super. at 176:

> [T]he weight of authority seems to be that the equivalent of entry may be obtained by the mortgagee making demand on the tenants for the rent accruing to the defendant under their leases and payment of the same by them[.]

*Accord Fogarty; Randal. Compare In re Prichard Plaza Associates, Ltd. Partnership*, 84 B.R. 289, 296 (Bankr.D.Mass.1988) (demand of tenants alone does not constitute possession in Massachusetts).

Significant to the resolution of this dispute is the right of a mortgagee to receive rents when there has been a garnishment of the rents by a lien creditor. A judgment creditor of a mortgagor may have the sheriff serve a writ of execution upon a lessee. Pa.R.Civ.P. 3108(a)(4). The effect of such execution is to create thereby a lien on all rents owing by the tenant to the mortgagor at the time of service of the writ and also on all rents which shall thereafter become due by the tenant until judgment in garnishment is entered against him. Pa.R.Civ.P. 3111(b). *See also Miners Sav. Bank v. Thomas*, 140 Pa.Super. 5, 12 A.2d 810 (1940).

Two Pennsylvania cases discuss the relative priorities of the lienor and the prior mortgagee concerning rents. *Fogarty v. Shamokin & Mount Carmel Transit Co.*, 367 Pa. 447, 80 A.2d 727 (1951); *Miners Sav. Bank. See also Colbassani v. Society of Christopher Columbus*, 159 Pa.Super. 414, 48 A.2d 106 (1946). In *Miners Sav. Bank*, even though the mortgagee had a rent assignment which was recorded before the execution and creation of the lien, the lienor was entitled to all rents due and owing at the time of the execution and all rents arising thereafter until the mort-

*Prichard Plaza Associates, Ltd. Partnership*, 84 B.R. at 299 (no rent sequestration permitted in Massachusetts).

gagee took constructive possession of the realty. However, upon demand by the mortgagee, all future rents *not then owing* by the tenant must be paid to the mortgagee, not the lienor:

> It is settled in this State that on default by a mortgagor, who has conveyed in the mortgage the rents, issues and profits of the mortgaged real estate ... the mortgagee, on giving notice to the tenant of the mortgaged premises, demanding that future instalments [sic] of rent be paid to him, is entitled to the *rents accruing after such notice* as against the mortgagor landlord.... [A]nd as the rights of an attaching creditor rise no higher than those of his judgment debtor, the attachment is subjected to the superior rights of the mortgagee, if, as, and when he asserts them by giving the tenant notice of his demand for payment of the rent accruing after such notice. It has no effect on the rents which the tenant owed as a debt to the judgment debtor when the attachment was served, or which accrued under the lease prior to the assertion by the mortgagee of his superior right to the rents, by virtue of the conveyance in the mortgage[.]

*Miners Sav. Bank*, 12 A.2d at 812 (emphasis in original). *Accord Fogarty*, 80 A.2d at 729 ("... an attaching creditor may claim only rents that accrue prior to the date of the demand served on the tenant by the mortgagee").

In contrast, when there has been no intervening lien creditor, "a mortgagee having given notice to the tenants holding the mortgaged premises under leases granted by the mortgagor after the mortgage, is entitled to receive from the tenants *the rents actually due at the time of the notice as well as those which accrued afterwards.*" *Bulger*, 101 Pa.Super. at 177 (emphasis added).

## IV.

■ Applying these Pennsylvania common law precepts to the instant dispute, it

is clear that as of the moment the debtor filed its bankruptcy petition, Heller had not come into possession, either actual or constructive, of this realty. It had made demand for payment only upon the debtor. No demand for payment had been made of lessees; no foreclosure sale had occurred; there was no mortgagee in possession; and, no rent sequestration had been ordered. Thus, as of the date this bankruptcy case began, the debtor's tenants had a duty to continue to pay rent to the debtor/mortgagor.

Recently, in *In re Prichard Plaza Associates, Ltd. Partnership,* 84 B.R. 289 (Bankr.D.Mass.1988), which also involved the issue of rent sequestration in a "title" state, the court concluded that the right of a mortgagee to have rents viewed as cash collateral under 11 U.S.C. § 363(a) depended upon its interest in the rents as of the date of the bankruptcy of the mortgagor.

> The preferable position on the matter of state law equivalence is that taken by the courts who look to what the mortgagee's position was as of the commencement of the bankruptcy case. If the mortgagee was not then in possession, either actually or constructively through a receiver, these courts deny him the right to rents.

*Id.* at 300 (and cases cited). *Accord In re TM Carlton House Partners, Ltd.*

The *Prichard Plaza* court relied upon the evolution of the issue of the postpetition interest of a mortgagee to rents in bankruptcy, resolved in *Butner,* as support for its approach. Clearly, there are a number of decisions which have viewed the issue in the same way and interpreted *Butner* in the same way. That is, if the mortgagee had no right to receive the rents as of the time of the mortgagor's bankruptcy filing, then the rents, in essence, are not cash collateral. *Accord, e.g., In re Village Properties, Ltd.,* 723 F.2d 441 (5th Cir.),

*cert. denied,* 466 U.S. 974, 104 S.Ct. 2350, 80 L.Ed.2d 823 (1984); *Golden Enterprises, Inc. v. United States,* 566 F.2d 1207 (4th Cir.1977), *aff'd. sub nom., Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136; *In re Johnson,* 62 B.R. 24 (9th Cir. BAP 1986); *In re Kurth Ranch,* 110 B.R. 501 (Bankr.D.Mont.1990); *In re Harbour Town Associates, Ltd.,* 99 B.R. 823 (Bankr.M.D.Tenn.1989); *In re TM Carlton House Partners, Ltd.; In re Gotta,* 47 B.R. 198 (Bankr.W.D.Wis.1985); *In re Engstrom,* 33 B.R. 369 (Bankr.D.S.D. 1983).

There are those courts who have viewed the rights of the mortgagee in such a situation as "unperfected." *See In re Village Properties, Ltd. See also, Saline State Bank v. Mahloch,* 834 F.2d 690 (8th Cir. 1987). Since the rights of a secured creditor to look to postpetition property as collateral is derived from 11 U.S.C. § 552(b), which in turn states that this postpetition security interest must not be subject to avoidance under section 544, it is relatively easy to conclude that an unperfected security interest in rents has no right to be treated as cash collateral. *See McCafferty, The Assignment of Rents in the Crucible of Bankruptcy,* 94 Com.L.J. 433, 456–59 (1989) *("McCafferty ").*[7] *See generally In re Heide,* 915 F.2d 531, 534 (9th Cir.1990); *Sommers v. International Business Machines,* 640 F.2d 686 (5th Cir.1981); *In re Cox,* 68 B.R. 788, 802–03 (Bankr.D.Or. 1987).

Heller's challenge to the conclusion that its mortgagee's interest in rents is "unperfected," arises from the fact that its mortgage assignment clause has been recorded prepetition. Since recordation provides notice, which normally constitutes perfection, the conclusion that the interest is not perfected is not self evident. *See In re Porter,* 90 B.R. at 404; *Prichard Plaza,* 84 B.R. at 288; *McCafferty* at 471.[8] At bottom,

---

**7.** Heller argues that section 544 cannot be considered here because the chapter 11 debtor has not sought to avoid its security interest under that provision. This argument overlooks the provisions of section 552(b) which incorporates section 544. It also fails to note that, in a related context under section 362(d), courts can consider affirmative defenses which go to the

validity of the lien. *Accord In re Moore & White Co., Inc.,* 83 B.R. 277, 283 (Bankr.E.D.Pa.1988).

**8.** *Prichard Plaza,* in contrast, described the lien of a mortgagee in rents who has recorded its interest, but has not taken possession, as "inchoate." 84 B.R. at 298. Yet, "inchoate" liens are still viewed in bankruptcy as security interests

therefore, Heller argues in the instant matter that it holds a duly perfected security interest in rents which cannot be challenged under section 544. As such it contends that the rents should be viewed as cash collateral. *See In re BVT Chestnut Hill Apartments, Ltd.,* 115 B.R. 116 (Bankr.M.D.Tenn.1990); *In re Greenhaven Village Apts. of Burnsville,* 100 B.R. 465 (Bankr.D.Minn.1989); *McCafferty.*

Since the position of the Third Circuit under the Bankruptcy Act—*viz.* that mortgagees are entitled, as a matter of federal bankruptcy law, to receive postpetition rents—was overruled in *Butner,* only two reported decisions have addressed this question under Pennsylvania law. *In re TM Carlton House Partners, Ltd.* views the issue as did *Prichard Plaza* and concludes that the mortgagee's failure to have obtained possession of the realty prepetition negates any security interest in postpetition rents. Earlier, in *In re DiToro,* 22 B.R. 392 (Bankr.E.D.Pa.1982) (*DiToro II*), the court reversed its prior reported decision at 17 B.R. 836 and held that the mortgagee was entitled to receive postpetition rents. To the extent that *DiToro II* relies upon *Henshaw* for its result, and *Henshaw* in turn relied upon the law of this circuit prior to *Butner, DiToro II* is unpersuasive. *Accord In re TM Carlton House Partners, Ltd.,* 91 B.R. at 354. Alternatively, if the result in *DiToro II* was based in that case upon the creation of a postpetition escrow fund into which rents were paid to the chapter 13 trustee, a conclusion that the mortgagee was entitled to the rents under the terms of the escrow agreement would not support Heller's position here.

Heller states in its posthearing memorandum, at 6, that no Pennsylvania decision has held that a creditor holding a lien subsequent to a recorded rents assignment agreement obtains priority in the rents

over the mortgagee. That statement poses the mortgagee's entitlement to postpetition rents as dependent solely upon its ability to survive a challenge from the debtor in possession under section 544. Assuming that this fairly defines the true issue, *McCafferty* at 458–59, I find Heller's assertion overbroad. That is, a creditor with a recorded interest in rents in Pennsylvania may be primed to some extent by a later arising lien in rents. Not only is the lien creditor entitled to receive the rents coming due until the mortgagee takes constructive possession of the realty by making a demand upon the lessee, despite its prior recorded interest, but even after the mortgagee makes such a demand the lienor is entitled to the rents still in the tenant's possession if the rents were due prior to the demand. *Fogarty; Miners Sav. Bank.* That result would not occur if there were no lien and the rent were payable to the mortgagor. *Bulger.* Furthermore, such a result is inconsistent with the rights of account creditors and debtors under the Uniform Commercial Code. *See Dick Warner Cargo Handling v. Aetna Business Credit,* 746 F.2d 126 (2d Cir.1984) (rights of lender with a recorded security interest in accounts receivable had priority over rights of garnishing lien creditor in sums held by garnishee due the original borrower); *Los Angeles Paper Bag Co. v. James Talcott, Inc.,* 604 F.2d 38, 39–40 (9th Cir.1979) ("secured lender's interest in goods delivered to the buyer was superior to the interest of the unpaid cash seller of the goods"); *In re Sabre Farms, Inc.,* 27 B.R. 532 (Bankr.D. Or.1982). *Compare Detroit Metropolitan Area, Etc. v. Leto Const. Co.,* 423 F.Supp. 701 (E.D.Mich.1976) (garnishors had rights superior to lender with a prior recorded security interest in receivables because the garnishors, as unpaid construction laborers, were entitled to special protection under state law).[9]

entitled to adequate protection. H.R.Rep. No. 95–595 95th Cong., 1st Sess. 312 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 25 (1978) U.S. Code Cong. & Admin. News 1978, pp. 5787, 5810, 6269 (defining the term "lien" under the Bankruptcy Code). *Cf. In re Hope,* 77 B.R. 470 (Bankr.E.D.Pa.1987) (case reopened to permit debtor to file a motion to avoid an inchoate

lien). Thus, perfection is the issue in this dispute.

**9.** If it were otherwise—that is, if the rights of a garnishing lien creditor under the UCC took precedence over those of a prior perfected lender in accounts receivable to the extent that the receivables were then due and owing to the

Under section 363, Heller has the burden of proving that its interest in rents constitutes cash collateral. 11 U.S.C. § 363(o)(2). *See In re TM Carlton House Partners, Ltd.* It attempts to meet this burden by implying that a security interest in rents should be treated no differently than one in accounts receivable. Yet Pennsylvania law, (along with the law of other title states), does distinguish between these two types of collateral. Security interests in accounts receivable are governed by the Uniform Commercial Code; assignment of a mortgagor's interest in rent by Pennsylvania's common law. This common law permits a lien creditor to be paid prior to the interest of an earlier recorded assignment of rents, at least in part. Applying this nonbankruptcy law to the postbankruptcy rights of a mortgagee in rents, I conclude that state law requires actual or constructive possession of rents before bankruptcy is commenced for the mortgagee to be able to assert its security interest under section 363(a) and section 552(b).

Stated slightly differently, I conclude that recordation by a mortgagee of its rents assignment agreement by itself is not perfection, as it is not sufficient under Pennsylvania law to defeat all interests of intervening lien creditors. If the UCC were applicable, such recordation would be enough. However, in Pennsylvania possession of the realty is also needed. As that has not occurred here, Heller has no security interest in the debtor's postpetition rents.

## V.

Section 362(a), in general, enjoins Heller from now obtaining the requisite actual or constructive possession needed under Pennsylvania law for the rents to be considered its cash collateral. Yet some courts have interpreted 11 U.S.C. § 546(b) to permit mortgagees to take postbankruptcy actions which, in effect, amounts to constructive possession and results in perfection and an improvement of the mortgagee's position.

Section 362(b)(3) does indeed allow a creditor to perfect its interest, postpetition, to the extent that section 546(b) would be applicable. *See Virginia Beach Federal Sav. & Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir.1990). However, the provisions of section 546(b), which are an exception to the bankruptcy theme that the rights of a secured creditor are fixed as of the date of the bankruptcy filing, are in this circuit narrowly construed. *Equibank, N.A. v. Wheeling–Pittsburgh Steel Corp.*, 884 F.2d 80, 85 (3d Cir.1989); *In re TM Carlton House Partners, Ltd.*, 91 B.R. at 355–56.

As the Third Circuit Court of Appeals has noted, the provisions of section 546(b) "extend only to cases in which an interest is created prior to bankruptcy and its post-petition perfection relates back, as a matter of [nonbankruptcy] law, to the date of its creation." *Equibank*, 884 F.2d at 85. *Accord Makaroff v. City of Lockport*, 916 F.2d 890 (3d Cir.1990); *In re TM Carlton House Partners, Ltd.*, 91 B.R. at 355–56. Therefore, section 546(b) does permit postpetition perfection of security interests, but such perfection must be effective against an entity that acquires rights in the property prior to the date of such perfection. *Makaroff*, 916 F.2d at 894; *McLean v. City of Philadelphia, Water Rev. Bureau*, 891 F.2d 474, 479 (3d Cir. 1989).

As just discussed, the issue of constructive possession of rents in Pennsylvania is intertwined with the issue of perfection. Therefore, upon consideration of the applicability of section 546(b), it is clear that a mortgagee in Pennsylvania who takes the necessary steps of obtaining possession of rents neither has its rights relate back to the date its security interest was created, nor does it acquire rights upon possession which completely supercede the rights obtained by an intervening lien creditor. Rather, its right to receive rents is partially prospective. *See Miners Sav. Bank; Bulger. See also McLean v. City of Philadelphia.* Thus, sections 362(b)(3)

---

debtor—then currently held concepts of cash collateral and the effect of section 552(b) would be subject to serious challenge. Receivables

due and owing to chapter 11 debtors as of the commencement of the bankruptcy case would not be considered cash collateral.

and 546(b) do not support Heller's instant assertion that the postpetition rents of the debtor should be classified as its cash collateral.[10] *Accord In re TM Carlton House Partners, Ltd.; In re Prichard Plaza*, 84 B.R. at 300–01.

## VI.

Heller's last contention is derived from section 552(b). While section 552(a) generally invalidates prepetition security interests in postpetition estate property, *see In re Cross Baking Co., Inc.*, 818 F.2d 1027 (1st Cir.1987), section 552(b) is an exception to that principle. *Id.* Certain prepetition security interests in postpetition collateral are recognized by 552(b); but section 552(b) also contains an exception to this exception, "based on the equities of the case...." *See generally In re Photo Promotion Associates, Inc.*, 61 B.R. 936 (Bankr.S.D.N.Y. 1986).

■■■ Heller argues that it failed to take possession of the realty prior to the debtor's bankruptcy filing because it was negotiating with the debtor over repayment of the prepetition mortgage default. According to Heller, these negotiations inequitably "lulled [it] into inaction", Brief at 15, and caused it to "sacrifice its opportunity" to obtain possession of the realty. *Id.* Therefore, it requests, based upon the "equities", that the section 552(b) be utilized so that Heller is now viewed as having taken constructive possession of the realty.

Heller cites no decision supporting its position. Generally, based upon the legislative history surrounding the enactment of section 552(b), H.R.Rep. No. 595, 95th Cong., 1st Sess. 376–77 (1977), courts have interpreted the exception to the exception found within section 552(b) as designed to protect the interests of unsecured creditors against secured creditors. *See In re Photo Promotion Associates, Inc.* When estate funds were used to create or enhance the value of postpetition collateral, the estate would be able to recover such expenditures:

> The equity exception [in section 552(b)] is meant for the case where the trustee or the debtor in possession uses other assets of the bankrupt estate (assets that would otherwise go to the general creditors) to increase the value of the collateral.

*J. Catton Farms, Inc. v. First National Bank of Chicago*, 779 F.2d 1242, 1246 (7th Cir.1985). *Accord In re Cross Baking Co.; Matter of Village Properties, Ltd.*, 723 F.2d 441, 444 (5th Cir.1984), *cert denied*, 466 U.S. 974, 104 S.Ct. 2350, 80 L.Ed.2d 823 (1984) ("its purpose was to cover cases where an expenditure of the estate's funds increases the value of the collateral"); *Delbridge v. Production Credit Ass'n & Federal Land Bank*, 104 B.R. 824, 826 (E.D. Mich.1989).

Obviously, Heller in the instant dispute is attempting to use the equities exception in section 552(b) not to enhance the interest of unsecured creditors but as a way of benefitting secured creditors. This was not its purpose, and so Heller's contention shall be rejected. *See In re Cross Baking Co., Inc.*

■■■ Alternatively though, even if I had the statutory discretion to utilize section 552(b) in the manner Heller desires, the equities of this dispute would not justify the result desired by the mortgagee. The record made in this contested matter demonstrates that shortly prior to bankruptcy, the mortgagor and mortgagee exchanged proposals to address the debtor's default in mortgage payments. Heller unilaterally decided to reject the debtor's July 20th offer, and make a counteroffer on July 23 which would remain open until August 3, 1990. If Heller's offer were not accepted by its deadline, then Heller intended to assert all rights it was granted by the original loan documents. The debtor re-

---

10. To the extent that cases such as *DiToro II* hold that a postbankruptcy request by a mortgagee to recover postpetition rents amounts to constructive possession thereby entitling the mortgagee to receive the rents, I find such decisions unpersuasive. Absent the applicability of section 362(b), section 362(a) would fix the rights of the mortgagee as of the date of filing. *In re Prichard Plaza. DiToro II* is more persuasive when the existence of a consensual postpetition escrow account is considered.

sponded on July 25, 1990 that it would consider Heller's proposal, and then filed for bankruptcy one day later.

■ In general, the filing of a voluntary petition in bankruptcy is not considered fraudulent. *See generally Krajci v. Mt. Vernon Consumer Discount Co.,* 16 B.R. 462 (E.D.Pa.1981). Similarly, the exchange of proposals between mortgagor and mortgagee regarding the curing of a mortgage delinquency is not improper. The record made in this dispute does not reflect misconduct on the debtor's part; instead, Heller chose a course of conduct after sending the debtor a notice of default which contained a deadline by which the debtor had to act. Rather than agree to Heller's proposal, the debtor filed a bankruptcy petition. Assuming *arguendo* that section 552(b) permits the prepetition inequitable conduct of a debtor to result in the existence of a lien on postpetition property which otherwise would not exist—a difficult position to accept since unsecured creditors, rather than the debtor, may be affected adversely by this interpretation—the actions of the debtor here do not rise to such a level. Therefore, the final contention of Heller cannot be accepted.

## VII.

Since Heller has never sought to prevent the debtor from using the rents generated from the realty to operate and maintain the property, the underlying dispute here is more in the nature of defining the rights of the mortgagee than in preventing the debtor's use of cash collateral. Undoubtedly, Heller believes that if it had been found to have a security interest in rents, it would have greater leverage in negotiating the terms of a chapter 11 plan and in limiting management fees paid by the debtor. Whether that belief is correct I need not now decide. At present, I simply conclude that Heller has no right to demand that the debtor sequester postpetition rents because Heller failed, prepetition, to take actual or constructive possession of the realty.

An appropriate order shall be entered.

ORDER

AND NOW, this 6 day of December, 1990, upon consideration and for the reasons set forth in the accompanying Memorandum Opinion the motion of Heller Financial, Inc. ("Heller") is DENIED.