**In re SeSIDE COMPANY, LTD.**

**J.H. STREIKER & CO., INC.,**
**Plaintiff/Appellant,**

v.

**SeSIDE COMPANY, LTD.,**
**Defendant/Appellee.**

**Civ. A. No. 92–7381.**

United States District Court,
E.D. Pennsylvania.

March 26, 1993.

Janet I. Moore, Lesser & Kaplin, P.C., Blue Bell, PA, David B. Tatge, Ginsburg, Feldman & Bress, Washington, DC, for plaintiff-appellant.

Marvin Krasny, Wolf, Block, Schorr & Solis–Cohen, Philadelphia, PA, for defendant–appellee.

### MEMORANDUM

BARTLE, District Judge.

This is an appeal from a final Order of the Bankruptcy Court.[1]

In August of 1984, SeSide Company, Ltd. ("SeSide"), the debtor, purchased a residential apartment project located in Allentown, Pennsylvania from SCC Development, Inc., Knickerbocker Associates Limited Partnership and J.H. Streiker & Co., Inc. ("Streiker"), for $7,300,000. SeSide paid $2,100,000 in cash, and executed and delivered a $5,200,000 Wraparound Mortgage Note and Security Agreement to Streiker. The mortgage states that in the event of a default the mortgagee:

> [s]hall be entitled to collect and receive all earnings, revenues, rents, issues, profits and Income of the Mortgaged Property and every part thereof, all of which shall for all purposes constitute property of the Mortgagee.

This mortgage, including the above "assignment of rents" clause, was properly recorded on August 15, 1984 with the Recorder of Deeds in Lehigh County, Pennsylvania.

In March of 1992, SeSide defaulted on its mortgage payments. Streiker and SeSide entered into workout negotiations to restructure the debt. After these negotiations reached an impasse, SeSide filed its chapter 11 bankruptcy petition on June 19, 1992. On September 8, 1992, Streiker filed a motion with the Bankruptcy Court for an order sequestering the rents from the apartment complex, arguing that the rents were cash collateral under 11 U.S.C. § 363.

The Bankruptcy Court denied Streiker's motion to prohibit SeSide's use of the rents. It concluded that since Streiker did not have actual or constructive possession of the real estate on the date of the bankruptcy filing, its interest in the rents under Pennsylvania law was "unperfected." Because Streiker's security interest was unperfected, the Bankruptcy Court determined that the rent did not constitute cash collateral. Finally, the Bankruptcy Court held that 11 U.S.C. § 546(b) does not permit post-petition perfection of security interests in rents.

This Court must first determine whether Streiker's recordation of the mortgage, with the assignment of rents provision, was sufficient to entitle Streiker to assert an interest in the rents received by SeSide as cash collateral. If the pre-petition recordation of the mortgage was not sufficient, we must next determine whether 11 U.S.C. § 546(b) would permit Streiker to assert an interest in rents after the filing of the bankruptcy petition. Since there is no dispute as to the relevant facts in this case, our review of the legal conclusions reached by the Bankruptcy Court is plenary. *See, e.g., In re Sharon Steel Corp.,* 871 F.2d 1217, 1222 (3d Cir.1989).

▆ Whether or not the rents received by the debtor, SeSide, constitute cash collateral requires this Court to examine the complex interplay between various sections of the federal Bankruptcy Code and applicable state law, in this case the law of Pennsylvania. A trustee in bankruptcy

---

**1.** This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158.

("trustee")[2] is normally authorized to use, sell or lease property of the bankrupt estate in the ordinary course of business. 11 U.S.C. § 363(c)(1). An interest designated as cash collateral, however, may not be used, sold or leased by the trustee unless: (1) everyone that has an interest in the cash collateral consents; or (2) the court authorizes such disposition after notice and hearing. 11 U.S.C. § 363(c)(2). Furthermore, anyone holding an interest in cash collateral is entitled to adequate protection of that interest. *Id.* at § 363(e). Therefore, if the rents received by SeSide are not considered cash collateral, SeSide, as the debtor in possession, may use the rents in the ordinary course of maintaining its business. On the other hand, if the rents are considered cash collateral, SeSide may not use the rent money unless Streiker consents to the expenditure or the Bankruptcy Court orders otherwise.

The starting point in the analysis of whether the rents received by SeSide are cash collateral is § 363(a) of the Bankruptcy Code:

> ... *"[C]ash collateral"* means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and *includes* the ... *rents* ... *of property subject to a security interest as provided in section 552(b) of this title,* whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a) (emphasis added). Under this section, rents received from mortgaged property, either before or after a bankruptcy filing, would be cash collateral to the extent they are subject to a lien under § 552(b). *See* S.Rep. 95–989, 95th Cong., 2nd Sess., 1978 U.S.C.A.A.N. 5787, 5841, *reprinted following,* 11 U.S.C. § 363. Section 363, therefore, directs that this Court examine § 552(b) of the Bankruptcy Code which provides:

> Except as provided in sections *363,* 506(c), 522, *544,* 545, 547, and 548 of this

title, if the debtor and an entity entered into a *security agreement* before the commencement of the case and if the *security interest* created by such security agreement extends to *property* of the debtor acquired before the commencement of the case and to ... *rents,* ... of such property, then such security interest extends to such ... *rents* ... acquired by the estate after the commencement of the case *to the extent provided by such security agreement and by applicable nonbankruptcy law,* except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

*Id.* at 552(b) (emphasis added).

A "security interest" is defined under the Bankruptcy Code as a "lien created by an agreement." 11 U.S.C. at § 101(51). A "security agreement" is an "agreement that creates or provides for a security interest." *Id.* at § 101(50). "Lien" is broadly defined as a "charge against or interest in property to secure payment of a debt or performance of an obligation." *Id.* at § 101(37). Neither party has argued that the underlying mortgage held by Streiker is invalid. The question is whether the properly recorded rent assignment extends to Streiker a security interest.

By operation of § 552(b), it is necessary to examine Pennsylvania law as the "applicable nonbankruptcy law" to determine whether Streiker had a security interest in the rents by virtue of the rent assignment. *See Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Thus, if under Pennsylvania law, Streiker held a pre-petition interest in the rents to secure the payment of a debt, defined as a "lien" under the Bankruptcy Code, this interest would continue post-petition under § 552(b) unless another Bankruptcy Code section cuts off that interest. If the interest is not cut off, any rents collected by SeSide would constitute cash collateral under § 363.

■ Section 552(b) is expressly subject to other provisions of the Bankruptcy

---

**2.** In Chapter 11 cases, the debtor-in-possession, which in this case is SeSide, acts as the trustee and is entitled to use the trustee's powers. 11 U.S.C. § 1107.

Code, including § 544.[3] Section 544 of the Bankruptcy Code, known as the "strong arm" provision, vests a trustee in bankruptcy with the rights of a hypothetical lien creditor at the time of the bankruptcy filing.[4] Utilizing this section, a trustee can subordinate any security interest that is "lower" in priority than one held by a lien creditor on the date of bankruptcy. The practical effect of subordination of a security interest by the trustee is "avoidance" of that interest. A party holding an interest that is subordinate to the trustee acting as a lien creditor is relegated to the pool of general creditors represented by the trustee. *See generally* David Gray Carlson, *The Trustee's Strong Arm Power Under the Bankruptcy Code*, 43 S.Car.L.Rev. 841 (1992).

■ Although the status of a hypothetical lien creditor is conferred by federal law, the rights and powers a trustee can exercise as a hypothetical lien creditor are determined by reference to state law. *Lewis v. Diethorn*, 893 F.2d 648, 650–51 (3d Cir.), *cert. denied*, 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 332 (1990); *In re Bollinger Corp.*, 614 F.2d 924, 925 n. 1 (3d Cir.1980); *In re Funding Systems Asset Management Corp.*, 111 B.R. 500, 522 (Bankr. W.D.Pa.1990). Consequently, if Streiker's security interest in the rent survives the rigors of §§ 552(b) and 544, the rents obtained by SeSide would constitute cash collateral. 11 U.S.C. § 363(a). On the other hand, if Streiker's security interest in the rents could be subordinated by a judicial lien creditor, the rents obtained by SeSide would not be cash collateral and SeSide could use them in the ordinary course of business without regard to any objection by Streiker.

The dispositive inquiry before this Court, therefore, is whether under Pennsylvania law, the trustee, acting as a lien creditor, could subordinate any interest Streiker may have in the rents. If rent assignments were governed by the Commonwealth's Uniform Commercial Code ("U.C.C."), this Court's inquiry would be relatively easy. Since Streiker properly recorded the underlying mortgage containing the assignment, Streiker's interest would have been considered "perfected," and it would have rights superior to those of a trustee in bankruptcy acting as a lien creditor. Rent assignments, however, are specifically excluded from the Pennsylvania U.C.C., 13 Pa.C.S.A. § 9104(10). *See In the Matter of Bristol Associates, Inc. v. Girard Trust Bank*, 505 F.2d 1056, 1061–62 (3d Cir.1974).

Rent assignments are not dealt with statutorily in Pennsylvania. Therefore, we must examine the Commonwealth's common law to determine what rights, if any, a creditor holding a rent assignment obtains when the assignment is executed and recorded. If a creditor holding a recorded rent assignment does obtain an interest in the rents, this Court must evaluate the extent of this interest and whether this interest would be subordinate to a subsequently attaching judicial lien creditor.

---

**3.** Section 552(b) is also expressly subject to §§ 506(c), 522, 545, 547 and 548 of the Bankruptcy Code. None of these sections, however, is applicable to the instant appeal.

**4.** Section 544 provides:
(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a *judicial lien on all property on which a creditor on a simple*

*contract could have obtained such a judicial lien,* whether or not such a creditor exists;
(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, *an execution against the debtor that is returned unsatisfied at such time,* whether or not such a creditor exists; or
(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists. (Emphasis added)

■ In Pennsylvania, a mortgage does not constitute a transference of title from a mortgagor to a mortgagee. A mortgagee only obtains a lien securing the mortgagor's indebtedness. *See Randal v. Jersey Mortgage Investment Co.*, 306 Pa. 1, 158 A. 865 (1932). *See generally* William H. Lloyd, *The Mortgage Theory of Pennsylvania*, 73 U.Pa.L.Rev. 43 (1924). While a mortgagee has the right to seek possession of the mortgaged realty in the case of default, a mortgagor is entitled to continue receiving rents from the realty until the mortgagee obtains possession. *See Randal*, 158 A. at 865–866; *Colbassani v. Society of Christopher Columbus*, 159 Pa.Super. 414, 48 A.2d 106, 107 (1946); *Miners Savings Bank of Pittston v. Thomas*, 140 Pa.Super. 5, 12 A.2d 810, 813 (1940). After default, with or without the benefit of a rent assignment provision, a mortgagee may enter into possession of the mortgaged property and receive rents from tenants. *See Randal*, 158 A. at 866, *Peoples–Pittsburgh Trust Co. v. Henshaw*, 141 Pa.Super. 585, 15 A.2d 711, 714 (1940); *Bulger v. Wilderman and Pleet*, 101 Pa.Super. 168, 176 (1931). Without a rent assignment provision, however, a mortgagee can only demand rents from those tenants whose leases predate the mortgage. *See Fogarty v. Shamokin & Mount Carmel Transit Co.*, 367 Pa. 447, 80 A.2d 727, 729 (1951); *Peoples–Pittsburgh*, 15 A.2d at 714. On the other hand, a mortgage containing a rent assignment empowers a mortgagee to demand and receive rents from all tenants, regardless of when they entered into their leases. *See Fogarty*, 80 A.2d at 728–29.

■ The right of a mortgagee to receive rents, even when the mortgage contains an assignment provision, is grounded on "possession" of the underlying realty. A mortgagee can obtain "possession" of realty and consequently obtain a present right to receive rents in two ways: (1) by entering into "actual possession" of the real estate through foreclosure or by acting as a mortgagee in possession; or (2) by taking "constructive possession" of the realty by serving demand notices on the mortgagor's tenants. *See Fogarty*, 80 A.2d at 728–29;

*Colbassani*, 48 A.2d at 107; *Peoples–Pittsburgh*, 15 A.2d at 714; *Bulger*, 101 Pa.Super. at 176–77.

Two Pennsylvania Superior Court decisions address the relative rights of a creditor/mortgagee holding a properly recorded, yet unenforced, assignment of rents and a lien creditor of the same debtor. *Miners, supra;* and *Colbassani, supra.*

In *Miners*, the court was presented with a mortgage that contained a rent assignment provision conveying the rents of the mortgaged property to the mortgagee in case of a default. After the mortgagor defaulted, but before the mortgagee gave notice to the tenants of the mortgagor, an intervening judgment creditor of the mortgagor sought to attach the rent generated by the mortgaged property. 12 A.2d at 811. The issue before the court was whether the judgment creditor, who served the attachment, was entitled to the rents once the mortgagee demanded that the tenants pay him. The court held that the judgment creditor was entitled to the rents up until the mortgagee gave notice because prior thereto the mortgagor would have been entitled to the rents. *Id.* at 812–813. After the mortgagee gave notice, it was the mortgagee who was entitled to receive the rents. *Id.*

The *Miners* court explained that the judgment lien obtained by the creditor against the mortgagor was "junior in lien" to the previously "duly recorded" mortgage containing the rent assignment. *Id.* at 811. When the creditor attempted to attach the rents, "[t]he attaching creditor attached only *what still remained to the debtor* ... [since] [a]s to him, the prior assignments * * * were valid, and so they were as against his attaching creditors, *whose rights rose no higher than his*\*." *Id.* at 812 (citations omitted, emphasis in original). Therefore, the *Miners* court reasoned:

[T]he attachment is subjected to the *superior rights* of the mortgagee, if, as, and when he asserts them by giving the tenant notice of his demand for payment of the rent accruing after such notice. It

has no effect on the rents which the tenant owed as a debt to the judgment debtor when the attachment was served, or which accrued under the lease prior to the assertion by the mortgagee of *his superior rights to the rents, by virtue of the conveyance in the mortgage;* but as to rents accruing after notice and demand, *the superior rights of the mortgagee take precedence over the rights of the mortgagor and those standing in his shoes.*

*Id.* at 812 (emphasis added).

In *Colbassani,* the Superior Court reached the same conclusion as the *Miners* court, although in dictum. *Colbassani* also recognized that a judgment creditor, who attached the rent from a mortgagor's tenants, could exercise this right subject to the superior right of a mortgagee holding a previously recorded mortgage containing a rent assignment. 48 A.2d at 107.

█ At the time SeSide's bankruptcy petition was filed, Streiker, the mortgagee, had not obtained actual or constructive possession of the mortgaged property. As a result, Streiker had not "enforced" its right to receive rents prior to SeSide's bankruptcy filing. At the moment of bankruptcy, SeSide still retained the ability to collect the rents, even though it was in default on its mortgage payments, because Streiker had not acted to "enforce" its interest in the rents by taking actual or constructive possession of the mortgaged property. Although the right of a mortgagee, such as Streiker, to receive rents does not ripen until the mortgagee obtains actual or constructive possession of the mortgaged property, the right of the mortgagee to demand rents ripens upon default. *See Miners,* 12 A.2d at 812; *Colbassani,* 48 A.2d at 107. Streiker held a conditional right to demand the rents the moment the rent assignment was executed. As the Court of Appeals for the Second Circuit recently explained, "[t]he failure of a secured party to perform enforcement procedures prior to bankruptcy merely renders

an interest inchoate, not nullified." *In re Vienna Park Properties,* 976 F.2d 106, 112 (2d Cir.1992).

█ A mortgagee under Pennsylvania law must obtain either actual or constructive possession of the realty before it will have a present right to demand rents from tenants and "enforce" its assignment of rents. The "enforcement" of a right to receive rents is a concept distinct and apart from "perfection." Although "perfection" is a clearly understood concept under the Uniform Commercial Code, its applicability to assignment of rents has been a source of continuing confusion. *See, e.g., In re Mount Pleasant Ltd Partnership,* 144 B.R. 727, 733 (Bankr.W.D.Mich.1992). This Court adopts the view that "enforcement" embodies all of the steps necessary for a party actually to collect rents, whereas "perfection," for rent assignment purposes, is the process by which a secured party places third parties on notice of its interest and consequently provides protection against intervening third parties. *See, e.g., Balcor Pension Investors v. Winston XXIV Limited Partnership,* 147 B.R. 575, 579–80, 582–83 (D.Kan.1992), *appeal dismissed,* 988 F.2d 1012 (10th Cir.1993); *In re GOCO Realty Fund I,* 151 B.R. 241, 248 (Bank.N.D.Cal., 1993); *In re Vienna Park Properties,* 136 B.R. 43, 54 (Bankr. S.D.N.Y.1992), *aff'd,* 976 F.2d 106 (2d Cir. 1992); *In re Park at Dash Point, L.P.,* 121 B.R. 850 (Bankr.W.D.Wa.1990), *aff'd,* 985 F.2d 1008 (9th Cir.1993).

█ This Court does not agree that a creditor must have obtained a present right to receive rents prior to the bankruptcy in order to have an enforceable security interest in the rents as cash collateral. To the extent that the previous Bankruptcy Court decisions in this district have concluded otherwise, this Court finds them unpersuasive. *See TM Carlton House,* 91 B.R. 349 *Wynnewood House,* 121 B.R. 716. The "perfection"/"enforcement" distinction is critical.[5]

**5.** The *Wynnewood House* court concluded that because Pennsylvania common law permitted a lien creditor to be paid despite an earlier recorded rent assignment, recordation alone would be insufficient to defeat "all interests of intervening lien creditors." 121 B.R. at 726.

While it is true that Pennsylvania common law indicates that an intervening lien creditor is entitled to receive rents until default and the mortgagee makes a demand, the mortgagee with a properly recorded rent assignment may at any time in the future assert its rights and demand the rents. The right of a mortgagee to obtain rents is certainly prospective only. However, unlike an "unperfected" secured party under Article 9 of the U.C.C., Pennsylvania law allows an intervening lien creditor to take its security interest subject to a previously recorded, yet unenforced, rent assignment of a previous mortgagee. If the mortgagee were "subordinated" to a subsequent intervening lien creditor, the mortgagee's right to demand rents would be extinguished and the lien creditor would not be subject to the mortgagee's security interest at any time in the future. This, however, is not what occurs in Pennsylvania. *See Miners,* 12 A.2d at 811–12; *Colbassani,* 48 A.2d at 107.

After a careful reading of *Miners* and *Colbassani,* this Court concludes that the Pennsylvania Supreme Court would hold that rent assignments would be given priority relative to other lienholders based on the date they are properly recorded. Recordation of a rent assignment along with the underlying mortgage places third parties on notice that not only does the mortgagee have a security interest in the property, but also in the rents. Although a mortgagee may not be entitled to the rents until it takes some enforcement action, its priority relative to third parties, once it makes the demand, would be governed by the recordation date. This is the only interpretation that can justify the language in *Miners* that a judgment lien creditor is "junior in lien," that is, subordinate to a mortgagee holding a previously recorded, yet unenforced, rent assignment. *See Miners* 12 A.2d at 811.

This Court holds that under Pennsylvania law Streiker's security interest in the rents generated by the mortgaged property would not be subordinate to the trustee acting as a lien creditor. Streiker's rent assignment was executed and properly recorded well before the filing of SeSide's bankruptcy petition. As a result, Streiker's interest in the rents would not be voidable by the trustee under § 544. Streiker's interest will thus carry on post-petition under § 552(b), and any rents collected by SeSide are to be considered cash collateral within the meaning of § 363. Accordingly, the Court need not address Streiker's alternate position that § 546(b) permits Streiker to assert an interest in the rents after the bankruptcy petition had been filed.

This matter is remanded to the Bankruptcy Court for further proceedings not inconsistent with this opinion.

### ORDER

**AND NOW,** this 26th day of March, 1993, for the reasons set forth in the foregoing Memorandum, it is hereby **ORDERED** that:

1. The November 19, 1992 Order of the United States Bankruptcy Court denying the motion of J.H. Streiker & Co., Inc. to prohibit the use of cash collateral by SeSide Company, Ltd. is **REVERSED;** and

2. This matter is **REMANDED** to the Bankruptcy Court for further proceedings not inconsistent with the foregoing Memorandum.

---

The court reasoned that a mortgagee must obtain actual or constructive possession of rents before the bankruptcy petition is filed in order to assert that rents are cash collateral under § 363(a). *Id.*