COMMERCE BANK; Harris Savings Association, Appellees,

v.

MOUNTAIN VIEW VILLAGE, INC.; Property Management, Inc., Mountain View Village, Inc., Appellant.

No. 92–7652.

United States Court of Appeals, Third Circuit.

Argued July 7, 1993.

Decided Sept. 14, 1993.

---

Lawrence G. Frank (Argued), Law Office of Lawrence G. Frank, Harrisburg, PA, for appellant.

Lloyd R. Persun (Argued), Mette, Evans & Woodside, Harrisburg, PA, for Commerce Bank, appellee.

Richard C. Ruben (Argued), Hanson & Ruben Law Offices, Harrisburg, PA, for Harris Sav. Ass'n and Property Management, Inc., Appellees.

Before: SLOVITER, Chief Judge, NYGAARD and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

After the owner of an apartment complex defaulted on its mortgages, the mortgagees served notice on the tenants and began collecting the rents. Some months later, the owner petitioned for bankruptcy protection under Chapter 11 and asserted its right to use the rents as cash collateral in its reorga-

nization plan. The bankruptcy judge concluded that the rents were part of the estate, but was reversed on appeal by the district court. That court concluded that the rents were the property of the mortgagees. We agree with the district court and will affirm its order.

The debtor, Mountain View Village, Inc., is the owner of an apartment complex in Cumberland County, Pennsylvania. Mountain View gave Harris Savings Bank first and second mortgages dated March 17, 1989 and October 18, 1989, respectively, on Phases I, II, and V of the apartment project. The duly recorded mortgages contained an absolute assignment of rents, and gave the bank the right to accelerate the debt and enter and take possession upon default.

Mountain View then gave a mortgage to Commerce Bank on November 13, 1990, covering a building in Phase VI of the project. On that same date, Mountain View executed an assignment of rents and leases covering the same property. Both documents were properly recorded.

Mountain View defaulted on the mortgages. On August 23, 1991, Harris notified the tenants of its interests and collected the rents thereafter. On December 5, 1991, Harris entered a judgment in mortgage foreclosure and, on January 3, 1992, occupied the premises to the exclusion of Mountain View.

Commerce took possession of the Phase VI premises on September 24, 1991, collected the rents after that date and, on November 26, 1991, entered a judgment in foreclosure against Mountain View. A sheriff's sale was scheduled for March 4, 1992.

On January 6, 1992, Mountain View filed its petition for relief under Chapter 11 of the Bankruptcy Code. A few days later, Mountain View filed motions against Harris and Commerce for emergency use of cash collateral.

The bankruptcy judge concluded that Mountain View retained an equitable interest in the rents that he regarded as property of the estate and available as cash collateral. He then certified the issue as a controlling question of law. Both banks filed notices of appeals and motions for leave to appeal which the district court granted.

Without discussing its basis for jurisdiction, the district court decided that the rents and leases were not part of the debtor's estate. The court held that whether the banks held title to, or merely a security interest in, the rents and leases, the result was the same because the security interests were perfected prepetition. Therefore, the court reversed the bankruptcy judge's order. The debtor has appealed.

## I.

We must first consider whether this Court has jurisdiction over the appeal. 28 U.S.C. § 158(d) authorizes us to review "all final decisions, judgments, orders, and decrees entered under subsection[ ](a)." Subsection (a) gives district courts jurisdiction over "final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges." Thus, this Court has jurisdiction over final orders of the district court in appeals taken from final orders of a bankruptcy judge, *In re Colon*, 941 F.2d 242, 244 (3d Cir.1991), but not over a district court's discretionary review of a bankruptcy judge's interlocutory orders, *In re White Beauty View, Inc.*, 841 F.2d 524, 527 (3d Cir.1988).

In certifying a controlling question of law, the bankruptcy judge properly did not rely on 28 U.S.C. § 1292(b) that refers only to orders of the district court. However, we construe the certification here as a method of calling attention to a factor that might influence a district court to grant discretionary review of an otherwise interlocutory order. As such, a certification by a bankruptcy judge is a helpful innovation. Nevertheless, if the order is interlocutory, certification by a bankruptcy judge does not authorize an appeal to this Court. *See In re Colon*, 941 F.2d at 244; *In re White Beauty View, Inc.*, 841 F.2d at 527. We must, therefore, determine whether the bankruptcy judge's order is final, making leave to appeal unnecessary.

This Court has emphasized that considerations unique to bankruptcy proceedings require us to take a pragmatic approach

to finality. *In re Market Square Inn, Inc.*, 978 F.2d 116, 120 (3rd Cir.1992); *In re Rosemary Brown*, 916 F.2d 120, 123 (3d Cir.1990); *F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 103 (3d Cir.1988); *In re White Beauty View, Inc.*, 841 F.2d at 526; *In re Christian*, 804 F.2d 46, 47–48 (3d Cir.1986); *see also In re Comer*, 716 F.2d 168, 171–72 (3d Cir.1983); *In re Marin Motor Oil, Inc.*, 689 F.2d 445, 448–49 (3d Cir.1982). The same rationale applies equally to an order of the bankruptcy judge as to an order of the district court. *See In re Rosemary Brown*, 916 F.2d at 124 n. 8; *Walsh Trucking Co. v. Insurance Co. of North America*, 838 F.2d 698, 701 (3d Cir. 1988). However, we do adhere to the traditional, less flexible standard of finality when no countervailing bankruptcy considerations are present. *See In re Jeannette Corp.*, 832 F.2d 43, 45 (3d Cir.1987); *In re Delores Brown*, 803 F.2d 120, 123 (3d Cir.1986).

■ In deciding whether a bankruptcy order is final, we have given weight to such factors as the impact on the assets of the estate, the preclusive effect of a decision on the merits, the need for additional fact-finding on remand, and whether the interests of judicial economy will be furthered. *See F/S Airlease II, Inc.*, 844 F.2d at 104; *In re Meyertech Corp.*, 831 F.2d 410, 414 (3d Cir. 1987).

■ Application of these considerations in this case requires us to treat the bankruptcy order as final. The only potential assets of any substance in the estate are the rents and the mortgaged properties, and without them, a reorganization under Chapter 11 could not occur. By finding that the rents and leases were part of the estate, the bankruptcy judge finally rejected the banks' claims of sole rights to the rents and made reorganization a possibility. To delay a decision on this critical ruling would allow the Chapter 11 proceeding to continue only to have it undone at its finality if the order was incorrect. In these circumstances, we will treat the orders of the bankruptcy judge and the district court as final and assume jurisdiction over the merits.

## II.

■ As the district court correctly observed, the Supreme Court has held that the property interests of mortgagor and mortgagee are created and defined by state law. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *see also Nobelman v. American Sav. Bank*, —— U.S. ——, ——, 113 S.Ct. 2106, 2108, 124 L.Ed.2d 228 (1993). In *Butner*, a case involving a dispute between a bankruptcy trustee and a mortgagee over the right to rents, the Court disapproved our holding in *Bindseil v. Liberty Trust Co.*, 248 F. 112 (3d Cir.1917), where we gave the mortgagee only such remedies as would be found in " 'the equitable administration of the bankrupt's estate.' " *Butner*, 440 U.S. at 56, 99 S.Ct. at 918 (quoting *Bindseil*, 248 F. at 114). Rather, the Supreme Court instructed bankruptcy courts to take the necessary steps to "ensure that the mortgagee is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy had ensued." *Id.*

Mortgages were used in medieval times and eventually developed along two avenues. The first was to treat the security instrument as conveying legal title of the property to the creditor. Under the so called title theory, the owner transferred the property in fee simple providing that, if he repaid the debt by a specified date, the creditor would reconvey the property. If the owner failed to satisfy the debt, the creditor would hold the property in fee simple.

Under the second approach, by contrast, the security instrument merely created a lien on the property. Development of the equity of redemption in the chancery courts led to growth of this lien theory so that, although the creditor mortgagee had legal title, the mortgagor remained the actual owner until debarred by default or judicial decree. In time, the only method by which the creditor could terminate the equity of redemption was by foreclosure.

Some states in this country have adopted the title theory while others have favored the lien approach. A significant difference between lien and title states is the creditor's right to possess the land before foreclosure.

The title theory permits the creditor to enter the land upon default, but in lien states, the creditor is required to foreclose or have a receiver appointed. *See* Frank S. Alexander, *Federal Intervention in Real Estate Finance: Preemption and Federal Common Law,* 71 N.C.L.Rev. 293, 300–03 (1993).

In defining the relationship between mortgagor and mortgagee, Pennsylvania follows the title theory where the mortgage is considered a conveyance in fee simple to the creditor. In *Randal v. Jersey Mortg. Inv. Co.,* 306 Pa. 1, 158 A. 865 (1932), the Pennsylvania Supreme Court explained its title theory approach:

> While ordinarily, as to third parties, a mortgage may be only a security for the debt specified in the accompanying bond, it is, as to the mortgagor and mortgagee, and those claiming under and through them, a conveyance of the land, and may be enforced as such whenever the mortgagee deems it necessary so to do in order to enable him to speedily and effectively recover the amount then due on the bond.

If the owner is in default, the mortgagee may enforce the mortgage provision that conveys the rents to him by peacefully entering the premises and taking the profits until the debt is paid. *Bulger v. Wilderman,* 101 Pa.Super. 168, 172 (1931). "[T]he equivalent of entry may be obtained by the mortgagee making demand on the tenants for the rent ... and payment of the same by them." *Id.* at 176. The mortgagee must account to the mortgagor for the amount of rents received, however, and credit the mortgage debt for the sums collected. *Randal,* 158 A. at 866.

The right to rents often depends on whether the mortgage predates the leases and contains an express conveyance of the rents. These variables are discussed in *Peoples–Pittsburgh Trust Co. v. Henshaw,* 141 Pa.Super. 585, 15 A.2d 711, 713–14 (1940) and *Fogarty v. Shamokin & Mt. Carmel Transit Co.,* 367 Pa. 447, 80 A.2d 727, 728–29 (1951), but they need not concern us here. In the case at hand, because the mortgages included assignments of rents, the banks' rights do not depend on whether the leases preceded the mortgages or followed them. *Fogarty,* 80 A.2d at 728–29. Nor need we explore the controversy that arises when the mortgagee does not make a demand on the tenants to enforce its rights until after the petition for bankruptcy has been filed.[1] In this case, both banks had served notice on the tenants and were collecting the rents before the bankruptcy petition was filed.

Another complication is also absent here—the banks both served notices on the tenants and began receiving rents more than 90 days before the debtor filed its Chapter 11 petition. Consequently, we note that, even if the preference provisions of the Bankruptcy Code, 11 U.S.C. § 547, were otherwise relevant to this case, they need not be discussed under these circumstances.

█ The stipulated facts conclusively establish that the banks are the holders of mortgages that contain assignments of rents conditioned upon default, that the debtor did default, and that, after notifying the tenants, the banks collected the rents. Under Pennsylvania law, it is clear that the banks were legally entitled to take the steps they did when the debtor was unable to cure the default. Therefore, the rents are not property of the debtor's estate and are not available for use in a plan of reorganization. *See Collier Real Estate Transactions, supra,* at 2–69.

The debtor argues that this case is governed by *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). In that case, the Internal Revenue Service seized personal property belonging to the debtor to satisfy a tax lien. The debtor then promptly filed for reorganization under Chapter 11. The Court held that seizure by the IRS did not transfer ownership to the property and the debtor retained title

---

1. *See In re SeSide Co.,* 152 B.R. 878 (E.D.Pa. 1993) (holding that a mortgagee may enforce its right to rents after the bankruptcy petition has been filed and disapproving *In re Wynnewood House Assocs.,* 121 B.R. 716 (Bankr.E.D.Pa. 1990) and *In re TM Carlton House Partners, Ltd.,* 91 B.R. 349 (Bankr.E.D.Pa.1988)), *appeal docketed,* No. 93–1334 (3d Cir. April 13, 1993); Laurence D. Cherkis, *Collier Real Estate Transactions and the Bankruptcy Code* ¶ 2.03[1], at 2–65 (1992).

until a tax sale took place. *Id.* at 211, 103 S.Ct. at 2316. Under those circumstances, the IRS was required to turn over the property to the debtor's estate. *Id. Whiting Pools* is distinguishable from the case at hand in that it involved personalty and not real estate.

In the case here, the district court held that the banks would prevail even if the mortgages were considered to be security interests rather than transfers of title. *See In re Century Inv. Fund VIII Ltd. Partnership,* 937 F.2d 371, 375 (7th Cir.1991). We need not determine that issue because the facts and prevailing Pennsylvania law establish that the banks had the right to enter the property, constructively as well as actually, and to collect the rents. We find no indication that Pennsylvania has veered from its longstanding title theory to one treating mortgages as security interests.

■ It should be noted that, by entering the property and collecting the rents, the banks were "enforcing" their rights, not "perfecting" their liens. The banks' liens arose when the mortgages were recorded. Liens arising at a later date would be junior to that of the banks. We recognize that mortgagees have no right to the rents until a default has occurred and, before they give notice, a junior lienor can attach rents that otherwise would come into the possession of the mortgagor. Once having given notice and enforcing its rights, however, a mortgagee would prevail over the junior lienor. *See Miners Sav. Bank v. Thomas,* 140 Pa.Super. 5, 12 A.2d 810, 813 (1940); *Colbassani v. Society of Christopher Columbus,* 159 Pa.Super. 414, 48 A.2d 106, 107 (1946).

The use of the term "perfection" can be confusing and should be avoided in connection with mortgages and assignments of rents. "Perfection" generally refers to the procedures necessary to establish liens under the Pennsylvania Uniform Commercial Code. That statute, however, does not cover mortgages and assignments of rents. *See In re Bristol Assocs., Inc.,* 505 F.2d 1056, 1061 (3d Cir.1974).

As explained in *Collier Real Estate Transactions and the Bankruptcy Code:*

[T]he mortgagee's lien in rents and profits under an instrument of assignment attaches and is perfected, for Bankruptcy Code purposes, at the moment of execution, delivery and recordation of the instrument. The moment at which the mortgagee becomes entitled to collect the rents and profits therefore does not give rise to a "relation back" of the lien to the time of such execution, delivery and recordation, inasmuch as the lien is already effective.

*Supra,* at 2–77. "[T]he mortgagee's lien at all times remains valid and enforceable, subject only to third party claims until the mortgagee proceeds to enforce its rights." *Id.* at 2–77 to 2–78.

Concluding that the banks took the necessary and appropriate steps to enforce their rights under the mortgage, and that title to the rents and profits, therefore, became theirs, we will affirm the judgment of the district court.