**In the Matter of FOXCROFT SQUARE COMPANY, Foxcroft Management Corporation, Debtors.**

**Civ. A. No. 93–4880.**

United States District Court, E.D. Pennsylvania.

Feb. 17, 1995.

---

660

Kenneth E. Aaron, Buchanan Ingersoll Professional Corp., Philadelphia, PA, for debtors.

Vincent J. Marriott, III, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA, for appellant Federal Nat. Mortg. Ass'n.

Alan R. Gordon, Philadelphia, PA, for creditor Official Committee of Unsecured Creditors.

Frederick Baker, Trustee, pro se.

## MEMORANDUM

GAWTHROP, District Judge.

The Federal National Mortgage Association [FNMA] appeals from the decision of a bankruptcy court order. This court has jurisdiction pursuant to 28 U.S.C. § 158(a). Because the appeal presents only issues of law, review of that decision is plenary. *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222–23 (3rd Cir.1989).

On February 7, 1991, Irwin Fox and Elaine B. Fox, Executrix of the Estate of William L. Fox borrowed $8,465,000.00 from Maryland National Mortgage for a residential apartment complex.[1] The mortgage is evidenced by a Multifamily Note, and secured by a Multifamily Mortgage, Assignment of Rents and Security Agreement. The Security Agreement provides that:

Upon delivery of written notice by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Instrument, and without the necessity of Lender entering upon and taking and maintaining full control of the Property ... Lender shall immediately be entitled to possession of all rents and revenues of the Property ... as the same become due and payable, including but not limited to rents then due and unpaid ... provided, however, that the written notice by Lender to Borrower of the breach by Borrower shall contain a statement that Lender exercises its rights to rents. Borrower agrees that commencing upon delivery of

such written notice ... each tenant of the Property shall make such rents payable to and pay such rents to Lender ... on Lender's written demand to each tenant therefor, delivered to each tenant personally, by mail or by delivering such demand to each rental unit....

Multifamily Mortgage, Assignment of Rents and Security Agreement ¶ 26.

On the same day it signed the loan documents, Maryland National Mortgage assigned all of them to FNMA.[2] On February 13, 1991, FNMA recorded the assignment with the Montgomery County Record of Deeds.

On March 1, 1993, the Foxes defaulted on their mortgage payments, and three weeks later, on March 21, they filed a Chapter 11 bankruptcy petition. They have continued to operate the building as debtors-in-possession for the benefit of their secured and unsecured creditors. On April 2, 1993, Maryland National Bank wrote them a letter informing them that they were in default. The letter also stated that it would:

serve as written notice by Fannie Mae of the breach by Borrower of the payment covenants under the Loan Documents and Fannie Mae hereby gives notice of its exercise of its right to the Rents and demands the immediate turnover of possession of all Rents.

Letter from Thomas C. Lidard, Jr, Assistant Vice President, Maryland National Mortgage Corporation, to Irwin C. Fox and Elaine Fox, Executrix of the Estate of William L. Fox (Apr. 2, 1993). Maryland National did not send a written rent demand to each tenant as required by the assignment-of-rents provision. At present, the debtors-in-possession continue to collect and use the rent.

On June 9, 1993, FNMA filed a motion with the bankruptcy court asking the court to order the Foxes to turn over the rents to

---

1. The debtors-in-possession in this Chapter 11 bankruptcy case are in the commercial and residential rental business. They control a real estate complex which contains office and retail space, as well as a golf course, fitness club, and an apartment building. The apartment building, which is known as Foxcroft Square Apartments, is the subject of this appeal.

2. However, Maryland National Mortgage continued as servicing agent for Fannie Mae.

FNMA, arguing that the rents were cash collateral under section 363 of the Bankruptcy Code. 11 U.S.C. § 363. The bankruptcy court denied the motion on the ground that FNMA had admittedly not provided, before the filing of the bankruptcy petition, written notice of default as required by the security agreement.

In this appeal, FNMA contends that, because it filed the loan documents with the Montgomery County Recorder of Deeds, it holds a perfected pre-petition security interest in rents from the apartments; it further asserts that, as such, the rents are "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code, 11 U.S.C. § 363(a), which the debtor-in-possession is generally precluded from using. The Foxes reply that the rents are not "cash collateral" within the meaning of the Code, and that they, as debtors-in-possession, have a right to collect and use the rents. Accordingly, the question distills as to whether the rents constitute "cash collateral" under the Code. I conclude that they do.

Resolution of the dispute lies in the interrelationship of various sections of the federal Bankruptcy Code, and their interplay with the applicable state law.

I begin the analysis with § 363 of the Code which normally allows a trustee, in this case the Foxes, to use, sell or lease the property of a bankrupt estate in the ordinary course of business. 11 U.S.C. § 363(c)(1). However, a trustee may not use, sell or lease an interest designated by the Code as "cash collateral" unless each entity that has an interest in it consents, or the court authorizes the debtor so to do. 11 U.S.C. § 363(c)(2).

▮ The Code defines "Cash collateral" to include "rents, or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title." 11 U.S.C. § 363(a). To the extent that rents are subject to a security interest described in section 552(b) of the Code, they are cash collateral. Section 552(b) provides:

if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to ... rents, or profits of such property, then such security interests extends to such ... rents ... acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law ...

11 U.S.C. § 552(b).[3]

Before parsing the security interest, I turn first to the applicable non-bankruptcy laws. In *Butner v. United States,* 440 U.S. 48, 56, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979), a case involving a dispute between a bankruptcy trustee and a mortgagee over a right to rents, the Court teaches "that the mortgagee is afforded ... the same protection he would have under state law if no bankruptcy had ensued."

▮ In defining the relationship between mortgagee and mortgagor, Pennsylvania follows the title theory. That is, the mortgage is considered a conveyance in fee simple to the creditor until the mortgagor has repaid the debt, at which point the creditor would reconvey the property. *Commerce Bank v. Mountain View Village, Inc.,* 5 F.3d 34, 38 (3rd Cir.1993). Upon default, the mortgagee may either peaceably enter the premises and take the profits, or rents, until the debt is paid, or it may take constructive possession of the premises, by making a demand for rent upon the tenants and taking the rents directly from them. Where, as here, a mortgage contains a rent assignment clause, upon default a mortgagee is empowered to demand and receive rents from all tenants, including those who entered into their leases after the mortgage was signed. *Fogarty v. Shamokin & Mount Carmel Transit,* 367 Pa. 447, 80 A.2d 727, 727–29 (1951). The mortgagee does not have a pres-

**3.** The Bankruptcy Code defines a security agreement as an "agreement that creates or provides for a security interest." 11 U.S.C. § 101(50). A "security interest" means a "lien created by an agreement." 11 U.S.C. § 101(51). A "lien" is a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37).

ent right to demand rents from tenants until it obtains either actual or constructive possession of the realty. *In re SeSide Co., Ltd.,* 152 B.R. 878, 884 (E.D.Pa.1993) (interpreting Pennsylvania law).

█ In this case, however, the mortgagee took neither actual nor constructive possession of the property. In an August 4, 1993, hearing before the bankruptcy judge, an assistant vice president for Maryland National Mortgage Corporation, testified that neither Maryland National nor FNMA took any action to take over the property. Transcript at 26, lines 5–8. He also testified that neither organization sent rent demand letters to any of the apartment tenants. Transcript at 27, lines 7–16. I thus conclude that the mortgagee failed to take either actual or constructive possession of the property.

The rule in this district has been that where, as here, a lender fails to take actual or constructive possession of the encumbered property before the commencement of the bankruptcy proceedings, the rents of the property are not cash collateral. *See, e.g., In re Wynnewood House Assocs.,* 121 B.R. 716 (Bankr.E.D.Pa.1990); *In re Carlton House Partners, Ltd.,* 91 B.R. 349 (Bankr.E.D.Pa. 1988). In *Wynnewood,* the mortgagee argued, as does the mortgagee in this case, that its interest in rents constituted cash collateral, in spite of the lack of actual or constructive possession of the rents, because it perfected its lien on the rents when it recorded the rent assignment clause. The court rejected this view, holding that "recordation by a mortgagee of its rents assignment by itself is not perfection;" the mortgagee must have taken actual or constructive possession of rents prior to the filing of the bankruptcy petition in order to have an enforceable security interest in the rents as cash collateral. 121 B.R. at 726.

A countervailing view has recently emerged in bankruptcy law; courts, including some in this district, now hold that a rent assignment clause need not be enforced to constitute cash collateral so long as it is properly recorded. *See, e.g., In re Vienna Park Properties,* 976 F.2d 106 (2d Cir.1992); *Prudential Insur. Co. of America v. Boston Harbor Marina Co.,* 159 B.R. 616 (D.Mass.

1993); *In re SeSide Co., Ltd.,* 152 B.R. 878 (E.D.Pa.1993); *In re Union Meeting Partners,* 163 B.R. 229, 232 (Bankr.E.D.Pa.1994); *In re Middleton Place Associates,* Bankr.No. 91–15134F, slip op. at 34–37 (Bankr.E.D.Pa. Dec. 21, 1993) (Judge Fox retreats from conclusion in *Wynnewood House* ).

█ These courts make a distinction between the enforcement of a right to receive rents and the perfection of the lien on rents that secures the mortgage; perfection, for rent assignment purposes, is the means by which a secured party puts third parties on notice of its interest in the rents, whereas enforcement "embodies all of the steps necessary for a party actually to collect rents." *SeSide,* 152 B.R. at 884 (citations omitted). According to this view, a mortgagee need not obtain actual or constructive possession of rents in order to maintain an enforceable security interest in the rents as cash collateral. *Id.* The mortgagee holds a perfected lien on rents once it properly records a rent assignment clause. *Id.*

In retreating from his decision in *Wynnewood House,* Judge Fox relied upon the predictive value of recent Third Circuit dicta that espoused a similar position. *Middleton Place,* slip op. at 37. In *Commerce Bank v. Mountain View Village,* 5 F.3d 34 (3rd Cir. 1993), the appellate court explored how the title theory plays out where the mortgagor has filed a Chapter 11 bankruptcy petition. The owner of an apartment complex defaulted on the mortgage before it filed for bankruptcy. The mortgagee then took possession of the property, collected the rents, and entered a judgment in foreclosure against the owner. Only after it had taken these steps did the owner file a Chapter 11 petition. *Commerce Bank,* 5 F.3d at 36. The question before the court was whether the rents were the property of the mortgagee or part of the estate. The court found for the mortgagee. *Id.* The court declined to address a situation in which the mortgagee has not taken possession of rents because in that case it had clearly taken possession. *Id.* at 38 n. 1, *citing In re Seside Co.,* 152 B.R. 878 (E.D.Pa. 1993); *In re Wynnewood House Assocs.,* 121 B.R. 716 (Bankr.E.D.Pa.1990); *In re TM Carlton House Partners, Ltd.,* 91 B.R. 349

**664**

(Bankr.E.D.Pa.1988). It did, however, provide the dictum relied upon in *Middleton Place* that addresses the issue in this case:

It should be noted that, by entering the property and collecting the rents, the banks were enforcing their rights, not "perfecting" their liens. The banks' liens arose when the mortgages were recorded....

The use of the term "perfection" can be confusing and should be avoided in connection with mortgages and assignment of rents. "Perfection" generally refers to the procedures necessary to establish liens under the Pennsylvania Uniform Commercial Code. That statute, however, does not cover mortgages and assignments of rents. [citation omitted].

As explained in **Collier Real Estate Transactions and the Bankruptcy Code:** "[The] mortgagee's lien in rents and profits under an instrument of assignment attaches and is perfected, for Bankruptcy Code purposes, at the moment of execution, delivery and recordation of the instrument."

*Id.* at 39, *quoting* **Collier** at 2–77.

 Although this dicta does not bind my decision, this language suggests that the appellate court will adopt the emerging view, as stated in *SeSide,* that a properly recorded rent assignment is cash collateral regardless of whether its holder has obtained possession of the rents. Section 363 does not require that a creditor actually own property for it to constitute cash collateral; the section expressly defines cash collateral as property in which a creditor has an interest, including a valid security interest. Thus, the issue is whether the creditor held a valid security interest in the building's rents, not whether the creditor had a present right to possess the rents. In *Mountain View,* the Third Circuit held that under Pennsylvania law, a security interest is perfected at the time it is recorded. It follows that one may maintain an interest in rents without having the right to collect the rents.

Following the reasoning of *Mountain View,* FNMA had an enforceable security interest when it recorded the rent assignment clause. This enforceable security interest constitutes cash collateral under § 363 of the Bankruptcy Code.

This matter is remanded to the bankruptcy court for further proceedings consistent with this opinion. An order follows.

### *ORDER*

AND NOW, this 16th day of February, 1995, upon consideration of Creditor Federal National Mortgage Association's appeal of the bankruptcy judge's Order of August 4, 1993, the Order is REVERSED and REMANDED to the bankruptcy court for further proceedings consistent with the attached opinion.